IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN WRIGHT CROFT and<br>SAMUEL E. CROFT JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-1430 |
| | ) | |
| DONEGAL TOWNSHIP,<br>RICHARD FIDLER, TAMMI IAMS,<br>RICHARD MARTIN, and LANE<br>TURTURICE, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION**

### I.  Introduction

Plaintiffs Kathleen Wright Croft and Samuel E. Croft Jr. are a married couple that reside in Donegal Township, Washington County. In November 2017, both Plaintiffs participated in a local election by casting ballots in favor of Plaintiff Wright Croft for a position on the Donegal Township Board of Supervisors. Plaintiff was successful in her campaign and assumed her elected office in January 2018. Supervisor Wright Croft is currently serving a four-year term on the Board, which expires on December 31, 2021. Since taking office, Supervisor Wright Croft has continuously pressed the Board for more transparency, especially in personnel and finance matters. She has also been very vocal about police support and contracting matters and has been at the center of a dispute among the Board pertaining to such matters.

Defendants Richard Fidler, Tammi Iams, and Richard Martin are also Supervisors on the Board. They are named in the Complaint in their individual and official capacities, as is Township Solicitor Lane Turturice. The final Defendant in this Action is Donegal Township.

Like Supervisor Wright Croft, Defendant Iams was elected to the Board in November 2017. Defendants Fidler and Martin were elected in November 2019 and replaced former Supervisors Tom Greaves and Douglas Teagarden. Mr. Greaves replaced Michael Smith after Mr. Smith resigned in March 2019. From January 2020 to present, the Board majority has been made-up of Defendants Iams, Fidler, and Martin. A fifth Supervisor, Edward Shingle, Jr., is not a Defendant in this Action.   Between the November 2019 election and January 2020, Defendants Iams, Fidler and Martin hired Attorney Tuturice to file a lawsuit against the Township related to the existing police contract.   That complaint was filed on December 18, 2019.  Attorney Tuturice was appointed as Solicitor in January 2020.

The evidence to be presented at the preliminary injunction hearing will demonstrate that since Supervisor Wright Croft took office in 2018, the Defendants, together or apart,  have taken a series of actions, each which is individually illegal, and which collectively were intended to marginalize Supervisor Wright Croft as a elected official and deprive her of her legal role as a member of the Board of Supervisors.  Those continuing actions include:

(a)    initiating legal and administrative proceedings against Supervisor Wright Croft, none of which has been meritorious or even fully litigated;

(b)    implementing and enforcing a "chain of command" policy, which prohibits Supervisor Wright Croft from interacting with Township employees and the public on an official basis and which bars her from the Township office and equipment;

(c)    violating the Sunshine Act and Second Class Township Code by deliberating in private to the exclusion of Supervisor Wright Croft and by failing to take public votes on official business transactions of the Township; and

(d)    withholding Township information and requiring Supervisor Wright Croft to comply with the Right-To-Know Law procedures in order to obtain Township information.

As will be discussed below, these actions by Defendants have not only violated various Pennsylvania statutes (i.e. the Second Class Township Code, Sunshine Act, and Right-To-Know Law), but they have also violated Supervisor Wright Croft's First Amendment Free Speech and Fourteenth Amendment Equal Protection rights.  Defendants' measures to exclude Supervisor Wright Croft from functioning as an elected Township Supervisor were taken in retaliation for her outspoken criticism of the Township in its mismanagement, specifically related to its handling of financial, police, and personnel matters.  Finally, Defendants have violated the Due Process and Equal Protection rights of both Plaintiffs, as well as Township citizens, to have their votes for Township Supervisor counted.

By the actions of Defendants, Supervisor Wright Croft was effectively impeached from office without due process of law. Defendants may argue, as they have in the past, that all of their actions were justified because Plaintiff Wright Croft cannot maintain a confidence or that she is a "trouble maker," all of which is denied by Plaintiff. However, even if that was the case, there are much less restrictive methods to control confidential information and potential disclosure thereof:

- They can seek her removal from office pursuant to Article VI, Section 7 of the Pennsylvania Constitution, which method of removal the Pennsylvania Supreme Court has deemed exclusive;

- They can file an Ethics Act complaint if that is appropriate; or

- They can have individual, non-quorum, non-deliberative discussions among themselves, which is the manner in which most splintered governing bodies communicate.

Nonetheless, Defendants have failed to take any of foregoing actions. Instead, in retaliation for Supervisor Wright Croft's exercise of her First Amendment rights, the named Defendants took specific steps to restrict her ability to fulfill her duties as a Supervisor, to

interfere with her ability to gain information she needed to perform her duties, to bar the flow of Township information to her, and to conduct a substantial portion of Township business improperly and secretly to the exclusion of Supervisor Wright Croft. However, short of removal from office, all elected officials are entitled to participate in government decision-making that, as will be discussed below, includes not only the final vote, but also the deliberations leading up to that vote.

## II.      The Standard Applicable to the Grant of a Preliminary Injunction

The prerequisites for the grant of a preliminary injunction are well established.  A court must weigh four factors when deciding whether to grant a Motion for Preliminary Injunction: (1) whether the moving party has shown a reasonable probability of success on the merits; (2) whether the moving party will suffer irreparable injury if relief is not granted; (3) whether granting preliminary injunctive relief will result in even greater harm to the non-moving party; and (4) whether granting preliminary relief is in the public interest.   *Transcontinental Gas Pipe Line Company, LLC v. Permanent Easement for 2.14 Acres, et al*., 907 F.3d 725, 733 (3rd Cir. 2018); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254-1255 (3rd Cir. 1985); *Smith v. Township of Aleppo*, 2005 WL 4984380, *15 (W.D. Pa. 2005)(citing *American Civil Liberties Union v. Reno*, 217 F.3d 162, 172 (3rd Cir. 2000)). Balancing the factors in this case weigh in favor of granting the requested injunction.

In this case, which involves public officials, violations of statutes, and constitutional violations, a number of specific principles apply:

- The loss of First Amendment freedoms, even for minimal periods of time constitutes irreparable injury.  *Elrod v. Burns*, 427 U.S. 347, 373-4 (1976); *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3rd Cir. 1998).

4

- Violation of an express provision of a statute is *per se* irreparable harm for purposes of a preliminary injunction. *Crowe v. School Dist. of Pittsburgh*, 805 A.2d 691 (Pa. Commw. Ct.. 2002).

- Every day that an elected official is prevented from exercising his/her duties is lost, is not compensable by money damages, and constitutes irreparable harm. *Riverside School Bd. v. Kobeski*, 604 A.2d 1173, 1176 (Pa. Commw. Ct. 1992).

It is important to understand the pendent state law claims because they constitute both an independent legal basis for relief and a predicate for the constitutional retaliation and equal protection claims. We begin, therefore, with the pendent state law claims.

**III.     Defendants' Actions Violate the Second Class Township Code, the Sunshine Act, and the Right-To-Know Law**

By blocking Supervisor Wright Croft from performing her duties as a Township Supervisor, Defendants have violated three statutes--the Second Class Township Code, the Sunshine Act, and the Right-To-Know Law. The Second Class Township Code provides that "[t]he corporate powers of townships shall be exercised by the board of supervisors…." 53 P.S. § 66505. The Second Class Township Code also requires an affirmative vote of a majority of the entire board of supervisors at a public meeting in order to transact any business. 53 P.S. § 65603. Accordingly, municipal power resides in the board, which in the case of Donegal Township, Washington County is comprised of five (5) elected Supervisors. The Board must exercise that power in accordance with the Sunshine Act, which requires that official action and deliberations are required to take place at a meeting open to the public. 65 Pa.C.S.A. § 704.

The interplay between statutory provisions investing full Boards with authority and the Sunshine Act was addressed in *Thomas v. Township of Cherry, Butler Cty.*, 722 A.2d 1150 (Pa. Commw. Ct. 1999). In that case, the Pennsylvania Commonwealth Court held that the actions taken by two of three township board members in private did not comport with Section 603 of

the Second Class Township Code because the decision made by the two members was not transacted at a public meeting with the requisite public notice and because no notice was provided to the third member of the Board. *Id*. at 1153-4. *Thomas* stands for the proposition that a municipality violates both the Sunshine Act and the applicable Township code when it fails to involve the entire Board.  Moreover, the Sunshine Act recognizes that government action includes two components, i.e. deliberation and voting. *See* 65 Pa.C.S.A. § 704.

Accordingly, it is not enough that Supervisor Wright Croft is allowed the bare right to vote.  Without the ability to obtain information and "deliberate" on the issues coming before the Board, Supervisor Wright Croft is being precluded from performing her fiduciary duty and the right to vote is a hollow one.

Supervisor Wright Croft's participation is blocked by being denied access to information pursuant to the chain of command policy instituted by the Board. Pursuant to this policy, first enacted under Resolution 2-2019, one Supervisor is appointed by the Board to oversee the Office; a second Supervisor is appointed to oversee the Police Department; a third Supervisor is appointed to oversee the Road Department; and a fourth Supervisor is appointed to oversee the Water and Sewer Department. Although Resolution 2-2019 was initially effective during that year, the chain of command policy is still implemented. The only time Supervisor Wright Croft was appointed as a department head was in May 2019, after Mr. Smith resigned. Supervisor Wright Croft's exclusion promptly resumed after the January 2020 reorganization meeting, when the following appointments were made: Defendant Fidler to oversee Police; Defendant Martin to oversee Roads, and; Defendant Iams to oversee both Office and Water and Sewer.

Under the policy, Township employees are prohibited from discussing business with any Supervisor that is not appointed to oversee their department. In addition, employees working in

the office are required to direct all communications from the public to the Supervisor appointed to oversee the office. Therefore, not only has the policy totally severed Supervisor Wright Croft's relationship with Township employees, who often have the most critical and recent information related to the Township, but it has also barred her from a critical mechanism for communicating with the public.

After enacting the policy, Defendant Iams, along with former Supervisors Smith and Teagarden publicly voted: (1) to authorize the former Solicitor to draft a proposed resolution declaring Mrs. Wright Croft in violation of Resolution 2-2019; and (2) to authorize the Solicitor to file a complaint in mandamus against Supervisor Wright Croft to require her to comply with Resolution 2-2019. That lawsuit was instead filed by the Township's former Secretary, Heather Wood, and at the behest of the Board majority, in the Washington County Court of Common Pleas at docket number 2019-1186 on March 11, 2019. Heather Wood is the stepdaughter of Defendant Martin. Heather Wood's attorney, Thomas Lonich, Esquire, is also Defendant Iams' personal attorney.  In that lawsuit, Wood states, in a verified pleading, that:

> Wood has been informed by Supervisors Teagarden, Iams, and Smith that while they have contemplated, and enacted, official action, litigation and the filing of a Mandamus Action, they prefer that Wood undertake such action on her own volition. (Complaint, ¶18)

That statement demonstrates both a violation of the Sunshine Act by a majority of the Board, including Defendant Iams, and as well as the Board's (and therefore the Township's) commands for the filing of the complaint.

This policy has been enforced as recently as two months ago, when Defendant Martin sent an August 19th e-mail to the representative of the Donegal Police Bargaining Association that berated the representative for sending a communication to the entire Board. Defendant

Martin then informed the representative that the Bargaining Association was only allowed to communicate with him or with Defendant Turturice and that communicating with other Supervisors was "not acceptable." Defendant closed his e-mail by stating, "[t]his communication policy as of today is mandatory and <u>not an option</u>…." [emphasis supplied].

The Defendants' enforcement of the chain of command policy, in practice, also violates the Sunshine Act. Although Resolution 2-2019 required the entire Board to act to transact business, in practice the appointed Supervisors only deliberate Township business among themselves--to the exclusion of Supervisor Wright Croft. It is also not uncommon for an individual Supervisor, acting alone and as a department head, to transact business on behalf of the Township.

Not only do the Defendants deny Supervisor Wright Croft information to inform her vote, but in many instances, they do not even afford her a meaningful vote. In one example, at the January 6, 2020 reorganization meeting of the Board, Defendants Fidler, Iams, and Martin used a different agenda from that which was given to Supervisor Wright Croft and the public. In the agenda used by Defendants, the definitive motions were already typed into place and additional annotations were provided for action items.

The following example further illustrates how Defendants' violations of the Sunshine Act, Second Class Township Code, and the RTKL have coalesced to exclude Supervisor Wright Croft from participating in Township business.  In April 2020, she became aware that, in the course of negotiating a new contract with the Donegal Police Department, Defendant Turturice prepared a non-disclosure agreement that was entered into by Defendants Fidler and Iams without approval from and vote of the Board at a public meeting and without requisite public notice. Supervisor Wright Croft had been excluded from all negotiations related to this contract

pursuant to the chain-of-command policy. These actions violate the Sunshine Act and the Second Class Township Code.

Further, when Supervisor Wright Croft sought to review the non-disclosure agreement to inform herself about Township business, Defendant Turturice responded:

> The township has 5 days to respond to your Right to Know Request.   You will be treated as any other citizen, Mrs. Croft. I will talk with the Chairman and Vice Chairman (who is also the Right to Know Officer), as soon as I am able.

Supervisor Wright Croft's request for the non-disclosure agreement was not pursuant to a RTKL request, although she promptly filed one after receiving Defendant Turturice's instruction. All of Supervisor Wright Croft's RTKL requests are subjected to review by Defendants Iams and Turturice. As to the non-disclosure agreement, Supervisor Wright Croft's request was denied and as of the date of this Brief, Supervisor Wright Croft has not seen the document.

RTKL addresses access by the "public," not by the members of an agency's governing body. Withholding information from Supervisor Wright Croft and requiring her to file RTKL requests to obtain information necessary to perform her duties as a Donegal Supervisor is inequitable and perverse.  It is nothing less than preposterous to argue that Defendant Iams, as both the Open Records Officer and a member of the Board of Supervisors, and Defendant Turturice, who serves at the pleasure of the Board, are entitled to determine what information any one Supervisor is entitled to see.

Supervisor Wright Croft has statutory and common law fiduciary duties as a Township Supervisor. To perform those duties, she requires access to all Township records--when she wants to see them, without having a third party review those requests, and without having to pay for copies. "Supervisors are not restricted to information furnished at a public meeting.  A

supervisor has the right to study, investigate, discuss and ague problems and issues prior to the public meeting at which he may vote." *Palm v. Centre Tp*., 415 A.2d 990, 992 (Pa. Commw. Ct. 1980). In fact, in Pennsylvania, a Supervisor has a duty to be informed. *Id*; *See also Smith v. Township of Aleppo*, 2005 WL 4984380, *13 (W.D. Pa. 2005). By repeatedly kicking her out of the Township office and closing the office, the Defendants have physically blocked her access to Township records and information.

### IV.    Defendants' "Chain Of Command" Policy Violates the First Amendment

Under the "chain of command" policy, Township employees are prohibited from discussing Township business with any Supervisor who is not their appointed department head. Inquiries from the public are also siloed to the particular Supervisor appointed to oversee the office. As mentioned above, Supervisor Wright Croft is continuously excluded under the policy. Therefore, the policy has had the predictable effect of eliminating direct communication between Supervisor Wright Croft and the Township's employees. It also allows individual supervisors to act as the gatekeeper of employee and public communications with other Board members.

Employees, in many instances, have the most current, accurate, and important information about the Township's operation and performance. Situations arise where employees will not feel comfortable talking with their appointed Supervisor or in public. They may fear retaliation or they may have a complaint about the Supervisor overseeing them. In any event, the policy has ended all direct communication between Supervisor Wright Croft and the Township's employees, thus adversely affecting her ability to fulfill her responsibilities as an elected public official.

Courts that have considered a governmental agency speech restriction requiring public employees to pre-clear communications with a supervisor and that giving the supervisor unfettered discretion to restrain employees' speech have ruled the policy to be an unconstitutional restraint on public employees' speech.  Specifically, the Third Circuit has held that applying "chain-of-command" policies, like the one in this case, chills public employees' speech on matters of public concern and is "simply incompatible with the principles that underlie the First Amendment." *Czurlanis v. Albanese*, 721 F.2d 98, 105 (3rd Cir. 1983).

Donegal's policy is constitutionally flawed in at least two ways, namely, it is an unreasonable restraint on public employees' speech in violation of the First Amendment, and it is a classic prior restraint, which presumptively violates the First Amendment. The First Amendment framework is unique. Unlike in most legal disputes, in First Amendment cases defendants carry the burden of proof and persuasion.  *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816, (2000) ("when the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions"); *Phillips v. Borough of Keyport*, 107 F.3d 164, 172-73 (3rd Cir. 1997)(*en banc*), *cert. denied*, 522 U.S. 132 (1997)  (accord). Because the subject policy restrains public employees' speech prior to publication, defendants have a heavy burden to justify it. "Any system of prior restraints on expression . . . bear[s] a heavy presumption against its constitutional validity." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  Defendants must show that their interests outweigh the "necessary impact on the actual operation of the Government" caused by allowing free speech between Board members and staff.  *United States v. National Treasury Employees Union,* 513 U.S. 454, 468 (1995).  In other words, Defendants must prove that interaction directly between Board members and staff has in the past significantly disrupted Township

operations, and that the pre-clearance and channeling requirements are a narrowly-tailored means of addressing those disruptions.

Because courts have declared unconstitutional similar pre-clearance and channeling policies and, therefore, few if any government employers actually enforce them, Defendants' burden to show that their policy is "necessary" for Township administration and management is insurmountable.  If all other public employers can function without similar policies, this one cannot be "necessary."  *Belyeu v. Coosa Co. Bd. of Educ.*, 998 F.2d 925 (11th Cir. 1993); *Leuthje v. Peavine Sch. Dist. of Adair Co.*, 872 F.2d 352 (10th Cir. 1989); *Knapp v. Whitaker*, 757 F.2d 827 (7th Cir. 1985), *cert. denied, Dist. No. 6*, 746 F.2d 505 (9th Cir. 1984); and *Czurlanis v. Albanese*, 721 F.2d 98, 105 (3rd Cir. 1983).

In *Czurlanis v. Albanese*, a case that is on-point, the Third Circuit relied on a straightforward First Amendment analysis to hold that the government's interest in efficiency did not justify disciplining a county auto mechanic who violated a chain-of-command policy by complaining directly to elected officials. *See Czurlanis*, 721 F.2d at 100. The court recognized the value in requiring subordinate public employees to follow the chain-of-command and not speak directly to elected officials, but the public interest in an "informed citizenry," and the First Amendment speech rights of public employees, outweighed any governmental interest in efficiency. *Id*. at 105. Moreover, the court noted that the policy "impermissibly chilled speech" on matters of public concern because it compelled "public employees to route complaints about poor departmental practices to the very officials responsible for those practices." *Id*. at 106. This in turn "deprive[d] the public in general and its elected officials in particular of important information about the functioning of government departments." *Id*.

Donegal's policy is also a classic, facially unconstitutional prior restraint.  Not all laws that burden speech are "prior restraints," but this one is.  As the Supreme Court uses the term, a prior restraint occurs when:  (1) a person who seeks to exercise First Amendment rights must apply to the government for permission; (2) the government is empowered to determine, based on the proposed communication's content, whether to grant the applicant permission to speak; (3) permission to speak depends on the government's affirmative action; and (4) approval is not a routine matter, but requires the government to examine facts, exercise judgment, and form opinions.  *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975); *See also, Alexander v. United States*, 509 U.S. 544, 550 (1993).

Such standardless delegations of administrative discretion carry with them the risk that an official will use the rule selectively to punish unpopular causes.  The absence of standards serves as a "device for the suppression of the communication of ideas and permits the official to act as censor." *Cox v. Louisiana*, 379 U.S. 536, 557 (1965).  Such a standardless pre-clearance system also "intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood v. Plain Dealer*, 486 U.S. 750, 757 (1988).

A pre-clearance system that contains no standards to guide the censor, such as the one in this case, is unconstitutional on that basis alone. *Id*.  And the reasons for such a rule are present in spades in this case.  Only those who adhere to the party line would view such a requirement without trepidation.  Equally important, standardless policies permit agency heads to engage in content and viewpoint censorship. *Harman v City of New York*, 140 F.3d 111 (2nd Cir.1998). Supervisor Wright Croft requests that this Court enjoin Defendants' enforcement of the chain-of-command policy

### V.     Retaliation for Protected Speech Itself Violates the First Amendment

The U. S. Supreme Court has held that "an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." *Anderson v. Davila*, 125 F.3d 148, 160 (3rd Cir. 1997) citing *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). Under *Mt. Healthy* and its progeny, "an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech." *Anderson*, 125 F.3d at 161.

In *Anderson*, the district court enjoined police surveillance where plaintiff demonstrated that it was being conducted in retaliation for his having filed an EEOC complaint.  Although the Third Circuit vacated the injunction on other unrelated grounds, the Court first recognized that the plaintiff petitioned the government to 'fix' a problem.  *Anderson*, 125 F.3d at 162-63. Instead of engaging in such repair, the government "compounded [the plaintiff's] grievances" by commencing the surveillance operation. *Id*. The Court acknowledged that to ignore the retaliatory actions of the government would render useless the plaintiff's First Amendment right to petition. *Id*. The Court wrote that, as a consequence, the government could "simply engage in harassment any time an individual filed, or announced his intention to file, a lawsuit against them.  This result is hardly consistent with the fundamental principles of orderly protest, which our Constitution sought to preserve by protecting our right petition to petition the government for redress." *Id*.

Here, it is clear that the Board took action against Supervisor Wright Croft in retaliation for her exercise of First Amendment rights.  The balancing test for a First Amendment

retaliation claim is as follows: (1) Plaintiff must demonstrate that her speech involved a matter of public concern and that her interest in the speech outweighed the Board's countervailing interest in providing efficient and effective services to the public; (2) Plaintiff must show that her speech was a substantial or motivating factor in the retaliatory action, which action must be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the Board can show that it would have taken the adverse action even if Plaintiff had not engaged in protected conduct. *Smith v. Township of Aleppo*, 2005 WL 4984380, *13 (W.D. Pa. 2005); *Zimmerlink v. Zapotsky*, 539 Fed.Appx. 45, 48 (3rd Cir. 2013).

First, "[s]peech involves a matter of public concern if it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id*. at *14 (quoting *Holder v. City of Allentown*, 987 F.2d 188, 195 (3rd Cir.1993)). In this case, there can be no question that Supervisor Wright Croft's public disclosure of Township mismanagement and policing issues were constitutionally protected expressions on matters of public concern, her interest in which outweighs the Board's countervailing interests.

Second, Supervisor Wright Croft's speech was a substantial or motivating factor in the retaliatory action taken by the Board against her. Specifically, Supervisor Wright Croft has been the subject of <u>three</u> lawsuits or investigations instituted by or on behalf of the Defendants:

- *Heather Wood v. Township of Donegal et al*, Washington County Court of Common Pleas at docket number 2019-1186 (filed March 11, 2019). Wood states therein:

  > Wood has been informed by Supervisors Teagarden, Iams, and Smith that while they have contemplated, and enacted, official action, litigation and the filing of a Mandamus Action, they prefer that Wood undertake such action on her own volition. (Complaint, ¶18)

- *Lane M. Tuturice v. Kathleen W. Croft*, Washington County Court of Common Pleas at docket number 2020-2274 (Writ filed on May 7, 2020).

- Supervisor Wright Croft was subpoenaed to appear before the Township Auditors for an examination under oath on August 20, 2020, who were targeting her in concert with the majority Board. At the time, the auditors required that she sign an attestation with non-disclosure language stating: "Therefore, it is understood that the questions and the answers to the questions **will not be discussed outside of this meeting** unless court action requires it." She did not sign it. To date, she has not been informed of the grounds of the investigation.

These proceedings were clearly initiated to intimidate Supervisor Wright Croft who was also given a **directive** from the Township Solicitor, which directive was sent to the entire Board, that she:

> needs to retract her public statements about the status of the police negotiations, immediately…. Mrs. Croft is spreading "fake news" to exploit it for political purposes, which is wrong in and of itself, but since it is being used to promote a ballot initiative her actions could also be a violation of the election code in that she is trying to influence an election issue through the use of fraud or subterfuge.

Further, Defendants have taken drastic measures to withhold information from Supervisor Wright Croft and otherwise to freeze her out of her position as an elected official. These measures, described in more detail above, include the application of RTKL procedures to her alone among the Supervisors, the institution and enforcement of the chain of command policy, and countless violations of the Sunshine Act and Second Class Township Code.

More so, also under the second prong, "[t]his type of retaliation goes far beyond the normal bickering and machinations that are characteristic of elected officials. Thus, the alleged acts of retaliation are not insufficient, as a matter of law, to 'deter a person of ordinary firmness from exercising [her] First Amendment rights.'" *Landis v. Bishop*, 2014 WL 12775672, *4 (M.D. Pa. 2014). Admittedly the Third Circuit has "emphasized the clear right of elected public officials to disagree publicly with other government officials," because politicians should be able to withstand the everyday squabbles of hardball politics. *Zimmerlink v. Zapotsky*, 539 Fed.Appx. 45, 50 (3rd Cir. 2013) (citing *Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3rd

Cir. 2006)); *See Werkheiser v. Pocono Township*, 210 F.Supp.3d 633, 641 (M.D. Pa. 2016). However, the conduct of Defendants in this case has crossed the line by actually interfering with Supervisor Wright Croft's ability to perform her elected duties, becoming deleterious to democracy--nullifying a popular vote. *Werkheiser*, 210 F.Supp.3d at 641.

In *Zimmerlink v. Zapotsky*, plaintiff, one of three elected County Commissioners of the Board of Commissioners for Fayette County, claimed that she had been retaliated against because of her political views and political speech in violation of her rights under the First Amendment. 539 Fed.Appx. 45, 46-47 (3rd Cir. 2013). Specifically, she claimed that she was excluded from secret meetings of the Board of Commissioners, meeting minutes were manipulated to "vilify" her, and public statements were made against her, blaming her for zoning enforcement issues. *Id*. In rejecting her claim, the Third Circuit wrote "[t]he facts alleged in this case—the harassment, the stealthy negotiating with third parties, and the public statements—may have been unpleasant and unprofessional, but they hardly approach the extreme conduct that gives rise to a First Amendment retaliation claim." *Id*. at *50.

By contrast, the conduct of the Defendants herein is not merely unprofessional and politicians disagreeing with and taunting one another. Supervisor Wright Croft, as an individual, was a named defendant in litigation launched by the Township Solicitor and by the Board. She was forced to expend her own funds to defend herself before the Board of Auditors and was directed to sign an NDA swearing that she would not speak about the subject matter of the investigation. Supervisor Wright Croft has also been kicked out of the Township offices and subjected to a physical search by a police officer for trying to compile innocuous Township files for review.  She is no longer able to inform herself of Township business and to perform her duties as an elected Supervisor, all due to Defendants' illegal activities. The harassment and

intimidation have become so frequent and so persistent that the Township electorate has been robbed of the public official it voted into office.

Finally, it would also be difficult, if not impossible, for Defendants to demonstrate that the forgoing actions would have been taken even if Plaintiff had not engaged in protected conduct. These actions were meticulously designed to prevent Plaintiff from having access to Township information for the very specific reason of preventing her from speaking about it.

### VI.    The Differing Treatment Applied to Supervisor Wright Croft Violates Equal Protection Because it is Not Rationally Related to a Legitimate Government Purpose

The Equal Protection clauses of the United States and Pennsylvania Constitutions demand that all persons in similar circumstances be treated alike. *Reed v. Reed*, 404 U.S. 71, 76 (1971); *Laudenberger v. Port Authority of Allegheny County*, 436 A.2d 147, 155 (Pa. 1981). The U. S. Supreme Court has held that a "class of one" can bring an Equal Protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted).

Even under rational-basis review, which applies when the dissimilar treatment is not based on a suspect class or other violation of a constitutional right, the court must determine whether the classification is rationally related to a legitimate government purpose. *See, e.g. Maldonado v. Houston*, 157 F.3d 179, 184 (3rd Cir. 1998).  In this case, Defendants cannot justify their actions to prevent Supervisor Wright Croft from obtaining information she reasonably needs to fulfill her responsibilities as an elected official, information routinely available and/or provided to the other four Board members.  Given that, if indeed Supervisor Wright Croft engaged in the misconduct Defendants are likely to allege (which she categorically denies has occurred), state-law mechanisms exist to address the problem including, but not

limited to impeachment.  Consequently, Defendants cannot provide a reasonable explanation for treating Supervisor Wright Croft differently from her elected colleagues.

## VII.   Defendants' Precluding A Supervisor from Performing Her Duties Deprives All Plaintiffs of their Vote

In *Baker v. Carr*, 82 S.Ct. 691 (1962), the Supreme Court recognized a Fourteenth Amendment equal protection claim by voters whose franchise was diluted by a state apportionment statute which arbitrarily and capriciously apportioned legislative districts without reference to any logical or reasonable formula.  The Court, in its famous "one-man, one vote" decision, characterized the plaintiffs' injury as asserting "'a plain, direct and adequate interest in maintaining the effectiveness of their votes.'" *Id*. at 705. The Court went on to find that "a citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution." *Id*.

Plaintiffs herein are suffering an even more grievous harm than those in *Baker v. Carr*. Rather than a dilution of their vote caused by unequal voting districts, these Plaintiffs, and the broader Township electorate, have had their votes totally nullified by the exclusion from meaningful participation of the candidate for whom they voted.

## VIII.   Conclusion

Based upon the foregoing, Plaintiffs respectfully request that a Preliminary Injunction be entered in the form attached to Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

STRASSBURGER McKENNA
GUTNICK & GEFSKY

By:   /s/Gretchen E. Moore
      Gretchen E. Moore
      PA ID No. 202103
      gmoore@smgglaw.com

      E.J. Strassburger
      PA ID No. 10231
      estrassburger@smgglaw.com

      Alexis M. Wheeler
      PA ID No. 325649
      awheeler@smgglaw.com

      Four Gateway Center, Suite 2200
      444 Liberty Avenue
      Pittsburgh, PA 15222
      T - (412) 281-5423

      Counsel for Plaintiffs
      *Kathleen Wright Croft*
      *and Samuel E. Croft, Jr.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was served by First Class Mail, U.S. Mail, postage prepaid, this 12th day of October, 2020, on the following:

Donegal Township
34 N. Liberty Street
West Alexander, PA 15376

Tammi Iams
38 Old National Pike
West Alexander, PA 15376
*and*
Donegal Township
34 N. Liberty Street
West Alexander, PA 15376

Richard Martin
757 Route 40 W.
West Alexander, PA 15376
*and*
Donegal Township
34 N. Liberty Street
West Alexander, PA 15376

Richard Fidler
8 Fidler Lane
West Alexander, PA 15376
*and*
Donegal Township
34 N. Liberty Street
West Alexander, PA 15376

Lane Turturice
21 Gina Drive
Washington, PA 15301
*and*
Donegal Township
34 N. Liberty Street
West Alexander, PA 15376

STRASSBURGER McKENNA GUTNICK
& GEFSKY


/s/Gretchen E. Moore
Gretchen E. Moore
Alexis M. Wheeler