## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN WRIGHT CROFT and SAMUEL E. CROFT JR., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:20-cv-1430 |
| DONEGAL TOWNSHIP, RICHARD FIDLER, TAMMI IAMS, RICHARD MARTIN, and LANE TURTURICE, | ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## AMENDED COMPLAINT

Plaintiffs, Kathleen Wright Croft ("Mrs. Wright Croft") and Samuel E. Croft, Jr., by and through their undersigned counsel, file the within Amended Complaint: (a) to validate Mrs. Wright Croft's right to exercise the powers of the elected office of Supervisor of Donegal Township; and (b) to redress Defendants' violation of their civil rights.  In support of their Complaint, Plaintiffs allege as follows:

### I.  Parties

1.     Plaintiffs, Kathleen Wright Croft and Samuel E. Croft Jr., adult individuals, are married and reside at 900 Dry Ridge Road, West Alexander, PA 15376.

2.     Defendant, Donegal Township, Washington County, Pennsylvania ("Donegal" or "Township") is a Township of the Second Class, organized and operating under the laws of the Commonwealth of Pennsylvania, with a business address located at 34 N. Liberty Street, West Alexander, PA 15376.

3.      Defendant, Richard Fidler ("Fidler") is an adult individual who resides at 8 Fidler Lane, West Alexander, PA 15376.

4.      Defendant, Tammi Iams ("Iams") is an adult individual who resides at 38 Old National Pike, West Alexander, PA 15376.

5.      Defendant, Richard Martin ("Martin") is an adult individual who resides at 757 Route 40 W, West Alexander, PA 15376.

6.      Defendant, Lane Turturice, Esquire ("Turturice") is an adult individual who resides at 21 Gina Drive, Washington, PA 15301.

## II.      Jurisdiction and Venue

7.      Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. §1983 and questions of federal constitutional law. Jurisdiction also exists under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

8.      Venue is proper in this judicial district because the events giving rise to the cause of action occurred in this district.

## III.      Facts

9.      Mrs. Wright Croft is one of five Supervisors of Donegal, having taken office in January 2018 after being elected the preceding November.  Her term of office is four years and expires at the end of December 2021.

10.      Defendants Fidler, Iams, and Martin (collectively "Defendant Supervisors") currently serve, together with Mrs. Wright Croft and Edward Shingle, Jr., on the Board of Supervisors for Donegal ("Board").

11.      Defendant Iams took office in January 2018.

2

12.     Defendants Fidler and Martin took office in January 2020, replacing former Donegal Supervisors, Tom Greaves and Douglas Teagarden ("Teagarden"), whose terms ended on December 31, 2019. Former Supervisor Greaves only served on the Board for a short time after he filled a vacancy created by the resignation of Michael Smith ("Smith") in March 2019.

13.     Defendant Iams, Teagarden and Smith, constituted a majority of the five-member Board from January 2018 through March of 2019. Thereafter, from January 2020 to present, Defendant Supervisors have constituted a majority of the Board.

14.     Defendant Turturice was appointed Township Solicitor on January 6, 2020.

15.     Since their respective elections or appointment, all Defendants have acted as the agents of Donegal, under color of state law, and in conspiracy with one another.

16.     Pursuant to the Second Class Township Code, the corporate powers of Donegal are vested in the Township's Board of Supervisors. 53 P.S. § 66505.

17.     All Defendants have acted unlawfully and intentionally in conspiracy with one another to exclude Mrs. Wright Croft from exercising her statutorily created powers as an elected Supervisor of the Township.  They have also acted as individuals beyond their statutory mandates to represent the Township.

18.     In November and December 2018, Defendant Iams, along with former Supervisors Smith and Teagarden, excluded Mrs. Wright Croft:

> a.  from deliberations, other communications, and decisions regarding the employment of then-Secretary, Sharon Balach.
>
> -and-

     b.   from deliberations, other communications, and decisions regarding the advertisement of the position and the hiring of the now-former Secretary/Treasurer Heather Wood, Defendant Martin's step-daughter.

19.    In November 2018, Defendant Iams, along with former Supervisors Teagarden and Smith, excluded Mrs. Wright Croft from budgetary decisions, specifically those regarding reallocation of the excess police budget. In particular, during an executive session on November 26, 2018, it was brought to light that the then Board majority (Iams, Teagarden, and Smith) decided to reallocate the excess police budget without notifying the other two Supervisors (Mrs. Wright Croft and Shingle) and without a public meeting or the requisite public notice.

20.    On January 21, 2019, the Former Board Majority enacted Resolution 2-2019, a "chain of command" policy which on its face and in its enforcement had the following effects: (a) prohibiting Donegal employees from discussing official Township business with Mrs. Wright Croft; (b) effectively barring Mrs. Wright Croft from accessing Donegal computers and personnel files; (c) physically denying Mrs. Wright Croft access to the Township building; (d) unlawfully transferring the general power of the Township from the entire Board to the Defendant Supervisors.

21.    On February 18, 2019, the Former Board Majority publicly voted: (1) to authorize the former Solicitor to draft a proposed resolution (Resolution 3-2019) declaring Mrs. Wright Croft in violation of Resolution 2-2019; and (2) to authorize the Solicitor to file a complaint in mandamus against Mrs. Wright Croft to require her to comply with Resolution 2-2019.

22.    The afore-mentioned complaint in mandamus was instead filed by Heather Wood, at the behest of the Former Board Majority, in the Washington County Court of Common Pleas at docket number 2019-1186 on March 11, 2019.

23.     On February 25, 2019 and while in the presence of Township staff, Mrs. Wright Croft was searched by Donegal police after unfounded allegations of identity-theft were leveled against her by Heather Wood, who, prior to her termination in August 2019, worked in unison with Defendant Iams.

24.     In a memorandum to the entire Board dated March 18, 2019, the Township's former Solicitor advised as follows:

> The additional issue lies with Resolution 2-2019 itself. While the Township is able to pass resolutions relating to the general governance of the Township, it is not proper for the Township to restrict the Supervisors' access to information. Access to computers and personnel files may be necessary for the proper resolution of personnel or Township issues. Supervisors need access to this information in order to carry out the duties of their elected position.
>
> Ms. Woods [who ultimately filed the complaint] cannot seek Mandamus of a Resolution that contains portions that are not appropriate for enforcement. At this juncture, it is the opinion of this office that the Township not pass Resolution 3-2019 seeking enforcement of Resolution 2-2019. It is also the opinion of this office that the Township repeal Resolution 2-2019.

25.     On information and belief, Defendant Turturice received a copy of this memorandum when he became Township Solicitor in January 2020.

26.     Resolution 2-2019 has not been repealed and Defendant Supervisors and Defendant Turturice still act to enforce the same, despite Mrs. Wright Croft's requests to repeal same.

27.     On December 18, 2019, Defendant Turturice, who had yet to be formally appointed Township Solicitor, represented Defendants Iams, Fidler, and Martin, the latter two of which had yet to take office, by filing an Emergency Petition for Preliminary Injunction against Donegal Township in the Washington County Court of Common Pleas at Docket No. 2019-7976. The petition sought to enjoin the 2019 Board from transacting business regarding labor contracts or personnel matters until the Defendants Fidler and Martin took office. This action sought to

preclude Mrs. Wright Croft from on-going employment-related negotiations with the Donegal Police Department as well as from decisions related to the Township Secretary position.

28.     At the January 6, 2020 organizational meeting of the Board, Defendant Supervisors used a different agenda from that which was given to Mrs. Wright Croft. In the agenda used by Defendant Supervisors, the offices were already typed into place and additional annotations were provided.

29.     At the January 6, 2020 meeting, consistent with the chain of command policy, Defendant Iams was appointed the Water Department and Office Supervisor; Defendant Martin was appointed the Police Supervisor; and Defendant Fidler was appointed the Road Department Supervisor.  Mrs. Wright Croft did not receive any appointment.

30.     On or about January 10, 2020, Defendants Fidler and Iams in conjunction with Defendant Turturice created a legal correspondence folder, the existence and contents of which were kept secret from Mrs. Wright Croft until ten days later. Within this window, a lawsuit was filed by the Township and against the Police Bargaining Unit. Mrs. Wright Croft only learned of the suit by reading the newspaper.

31.     Also on January 20, 2020, Defendant Iams, in the presence of Defendant Fidler, told Mrs. Wright Croft that she was not allowed in the Township building without receiving permission from the Board and informed her that she must leave.  Defendant Iams instructed Mrs. Wright Croft to leave on other occasions and, when she refused, Defendant Iams resorted to closing the Township building.

32.     In April 2020, Mrs. Wright Croft became aware that, in the course of negotiating a new contract with the Donegal Police Department, Defendant Turturice had drafted a non-disclosure agreement that was executed by Defendants Fidler and Iams without either public notice

or a public Board vote. Further, Mrs. Wright Croft has been intentionally excluded from all negotiations related to this contract, apparently in accordance with the chain of command policy.

33.    Mrs. Wright Croft, as a Supervisor, has also been required on several occasions to file requests under the Pennsylvania Right-to-Know Law ("RTKL") in order to obtain Township records.  No other Supervisor has been required to follow this procedure to obtain Township information.

34.    On or about April 14, 2020, Mrs. Wright Croft e-mailed Defendant Turturice demanding to review the aforementioned non-disclosure agreement. Defendant Turturice responded that:

> The township has 5 days to respond to your Right to Know Request.   You will be treated as any other citizen, Mrs. Croft. I will talk with the Chairman and Vice Chairman (who is also the Right to Know Officer), as soon as I am able.

Mrs. Wright Croft had not submitted a request pursuant to RTKL at that time but did so upon receiving Defendant Turturice's above-response.

35.    All of Mrs. Wright Croft's RTKL requests are subjected to review by the Township's Open Record's Officer, Defendant Iams, and the Township Solicitor, Defendant Turturice. Mrs. Wright Croft's RTKL request was denied and, to date, Mrs. Wright Croft has yet to obtain access to the non-disclosure agreement.

36.    Defendant Turturice later stated he will only show her the agreement at his office. After the Office of Open Records got involved through the RTKL process, Defendant Turturice then offered that he could travel to the Township Building, at the Township's expense, to allow her to view the document, but she cannot take pictures or videos.

37.     On May 7, 2020, Defendant Turturice filed and had served a writ of summons against Mrs. Wright Croft in the Washington County Court of Common Pleas at docket number 2020-2274.  Defendant Turturice withdrew his writ on September 25, 2020, without prejudice.

38.     On June 17, 2020, Defendant Supervisors convened an executive session of the Board, providing Mrs. Wright Croft with only thirty-minutes prior notice of the meeting.

39.     At the July 28, 2020 regular meeting of the Board, Defendant Iams disclosed that she had directed Township employees not to share information with Mrs. Wright Croft.

40.     On or about July 29, 2020, Defendant Turturice sent the Board an e-mail rebuking Mrs. Wright Croft for making public statements regarding the Township's negotiations with the Donegal Police Department. Defendant Turturice stated, "Mrs. Croft needs to retract her public statements about the status of the police negotiations, immediately." Defendant Turturice went on to vilify Mrs. Wright Croft by accusing her of "spreading 'fake news,'" "hurting" the Township, and plotting to have the Township's insurance coverage cancelled.

41.     On or about August 19, 2020, Defendant Martin (the appointed Police Supervisor) sent an e-mail to the representative of the Donegal Police Bargaining Association that berated the representative for sending a communication to the entire Board. Defendant Martin then informed the representative that the Bargaining Association was only allowed to communicate with him or with Defendant Turturice, apparently in accordance with the chain of command policy, and that communicating with other Supervisors was "not acceptable." Defendant closed his e-mail by stating, "This communication policy as of today is mandatory and not an option…." [emphasis supplied].

42.     Also in 2020, Mrs. Wright Croft was made the subject of a surcharge investigation by the Donegal Board of Auditors, which is acting in conjunction with the Defendant Supervisors.

43.     On August 20, 2020, Mrs. Wright Croft was summoned by the Auditors for an examination under oath. The Auditors demanded that Mrs. Wright Croft sign a non-disclosure agreement regarding the contents of her examination. Mrs. Wright Croft's attorney told the auditors that her client would not agree to non-disclosure because a surcharge investigation involves matters of public concern. The Auditors refused to proceed with the examination and would not even disclose to Mrs. Wright Croft the grounds for the surcharge investigation.

44.     On October 13, 2020, after the commencement of this Action, the Board of Auditors filed its 2019 Municipal Annual Audit and Financial Report with the Washington County Court of Common Pleas. This filing was significantly later than ninety days after the close of the fiscal year, the deadline for filing such a document as set forth by the Second Class Township Code, 53 P.S. § 65904. In its report, the Board of Auditors imposed the following disputed surcharges against Mrs. Wright Croft and, in some instances, against others:

> a.  $17,959.35 for wages, social security, Medicare, unemployment, and unenumerated "wage expenses" of Heather Wood and unenumerated "legal expenses." Mrs. Wright Croft and Supervisor Shingle allegedly directed Heather Wood to work from home without first receiving approval from the Board. Even if they did send Ms. Wood home to work, which is denied, the Board of Supervisors had mechanisms available to them to mitigate or wholly prevent the purported financial loss.

> b.  $868.10 for purportedly "forcing" the Board of Auditors to subpoena her to the aforementioned examination under oath. However, the Board of Auditors is empowered by the Second Class Township Code, 53 P.S. § 65903, to issue subpoenas for this very purpose.

c.  $11,351.64 for paying the Road Crew, without explanation, which amount
    also includes unenumerated legal fees.  The circumstances underlying this
    surcharge not only occurred in 2018 (and therefore not subject to surcharge
    in the 2019 Auditor's Report), but did not involve Mrs. Wright Croft
    specifically, rather the majority of the Board.

d.  $4,369.96 for purportedly allowing the Chief of Police to prepare and
    submit erroneous invoices to Buffalo Township for police services that
    Donegal Township Police were providing due to a contract between the two
    municipalities. According to the Auditors,  the breakdown of the contract
    amount was $46.12/per hour for the first 96 hours of coverage per month,
    plus $41.00/per hour for each hour thereafter. The Chief was purportedly
    submitting invoices for $41.00/per hour for all coverage. In January 2019,
    the Auditors allege that the Chief summarily increased the rate to $42.23/per
    hour. The veracity of these charges is factually and legally disputed. This
    issue comes down to contract interpretation which Defendant Iams has
    vocally endorsed since becoming a Supervisor.  The Auditors findings are,
    interestingly and without explanation, consistent with Defendant Iams'
    position on the police contract.   Mrs. Wright Croft has been a vocal
    advocate of interpreting the contract on a weekly basis as written.
    Therefore, this charge, leveled against the entire Board, is a pretext to make
    this Auditor's efforts appear unbiased. However, the actions complained
    about in this charge has always been attributed to Mrs. Wright Croft and
    have been a major point of contention between her and the Board majority.

45.     The surcharged amounts are frivolous and were brought against Mrs. Wright Croft for the purpose of continuing this campaign of intimidation and violation of Mrs. Wright Croft's constitutional rights.

46.     Plaintiffs have reason to believe that Defendant Turturice, in particular, was working with the Board of Auditors in leveling these frivolous surcharges against Mrs. Wright Croft. In text exchange on or about March 8, 2020, between Defendant Turturice and an Assistant District Attorney for Washington County, Defendant Turturice commented, "the Auditors are hot on the trail" when discussing purported actions taken by Mrs. Wright Croft.

47.     On information and belief, Defendant Turturice was actively working with and for the Auditors, even though they are an independent body and are required to have separate counsel per the Second Class Township Code.

48.     Additionally, on or about February 18, 2020, Mrs. Wright Croft overheard the Auditors speaking to Defendants Martin and Iams related to the audit.  On information and belief, Plaintiffs believe and aver that the Defendants were working together and in conspiracy with the Auditors to target Mrs. Wright Croft.

49.     Defendant Martin made statements in public meetings in the Spring of 2020 related to the auditor's investigation and anticipated report.

50.     On information and belief, the Board majority and counsel intentionally left Mrs. Wright Croft out of numerous e-mails and other communications regarding official Township business.

51.     All of the foregoing actions have been motivated by Defendants' desire to silence Mrs. Wright Croft who has been an outspoken vocal, minority critic of Defendants' policies and

Township activities, specifically those relating to budgeting, expenditures, police contracts, and employment, and deprive her of the information necessary to serve as an elected official.

52.     The above and other unlawful actions are continuing.

**Count I**
**Kathleen Wright Croft v. All Defendants in their Official Capacities and as Individuals**
**Violation of Free Speech**

53.     The allegations set forth in the preceding paragraphs are incorporated by reference as if completely set forth herein.

54.     This Count involves violations of federal law under the First Amendment to the United States Constitution and pursuant to 42 U.S.C. § 1983.

55.     The actions set forth above are sufficient to deter a person of ordinary firmness from exercising her constitutional rights, which actions actually did hinder Mrs. Wright Croft's ability to do the same.

56.     As a direct and proximate result of their actions set forth in Paragraphs 17-46 above, Defendants have unlawfully: (a) violated Mrs. Wright Croft's First Amendment rights by retaliating against her for exercising her rights to Free Speech, political activity and political dissent; and (b) violated Mrs. Wright Croft's First Amendment rights through their "chain of command" policy.

WHEREFORE, Plaintiff, Kathleen Wright Croft, respectfully prays pursuant to Count One that this Honorable Court:

(1)     enjoin and restrain Defendants from (a) retaliating against Mrs. Wright Croft for exercising her First Amendment rights; (b) violating the Sunshine Act and Second Class Township Code; (c) restricting her access to any and all Township information; (d) requiring Mrs. Wright Croft to utilize RTKL procedures to obtain

Township information; (e) enforcing their "chain of command" policy against Mrs. Wright Croft;

- and -

(2)    award Mrs. Wright Croft her costs in this proceeding, including the payment of reasonable attorney's fees;

- and –

(3)    award Mrs. Wright Croft punitive damages;

-and-

(4)    grant such other and further relief as is deemed appropriate.

## Count II
### Kathleen Wright Croft v. All Defendants in their Official Capacities and as Individuals
### Violation of Equal Protection

57.    The allegations set forth in the preceding paragraphs are incorporated by reference as if completely set forth herein.

58.    As a direct and proximate result of their actions set forth above, Defendants without legitimate reason, have treated Mrs. Wright Croft differently from the similarly situated other Township Supervisors and therefore have unlawfully discriminated against Mrs. Wright Croft in violation of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff, Kathleen Wright Croft, respectfully prays pursuant to Count Two that this Honorable Court:

(1)    enjoin and restrain Defendants from: (a) violating the Sunshine Act and Second Class Township Code; (b) requiring Mrs. Wright Croft to utilize RTKL procedures to obtain Township information; (c) restricting her access to any and all Township

information; (d) enforcing their "chain of command" policy against Mrs. Wright

Croft; and (e) otherwise discriminating against Mrs. Wright Croft;

- and -

(2)     award Mrs. Wright Croft her costs in this proceeding, including the payment of

reasonable attorney's fees;

- and -

(3)     grant such other and further relief as is deemed appropriate.

**Count III**
**All Plaintiffs v. All Defendants in their Official Capacities and as Individuals**
**Violation of Due Process**

59.     The allegations set forth in the preceding paragraphs are incorporated by reference as if completely set forth herein.

60.     This Count involves a violation of Plaintiffs' right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

61.     Plaintiffs have a property and liberty interest in their votes and pursuant thereto, voted in the November 2017 election for Mrs. Wright Croft to serve as a Supervisor of Donegal.

62.     As a direct and proximate result of their actions set forth above, Defendants have interfered with Mrs. Wright Croft performing the duties of her elected office, have effectively denied Plaintiffs of their vote and, therefore, have violated Plaintiffs' rights to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiffs, Kathleen Wright Croft and Samuel E. Croft Jr., respectfully pray pursuant to Count Three that this Honorable Court:

(a)     enjoin and restrain Defendants from:  (a) violating the Sunshine Act; (b) requiring Mrs.

Wright Croft to utilize RTKL procedures to obtain Township information; (c) restricting

14

her access to any and all Township information; (d) retaliating against Mrs. Wright Croft

for exercising her First Amendment rights; (e) enforcing their "chain of command" policy;

and (f) otherwise discriminating against Mrs. Wright Croft and thereby violating her rights

to Due Process and Equal Protection as guaranteed by the Fourteenth Amendment to the

United States Constitution

- and -

(b)     award Plaintiffs their costs in this proceeding, including the payment of reasonable

attorney's fees;

- and -

(c)     grant such other and further relief as is deemed appropriate.

**Count IV**
**All Plaintiffs v. Defendants Donegal Township, Richard Fidler, Tammi Iams, and Richard Martin**
**Violation of the Second Class Township Code**

63.     The allegations set forth in the preceding paragraphs are incorporated by reference as if

completely set forth herein.

64.      Under the Second Class Township Code:

The board of supervisors shall meet for the transaction of business at least once each month at a time and place determined by the board of supervisors. A quorum is two members of a three-member board of supervisors or three members of a five-member board of supervisors. An affirmative vote of a majority of the entire board of supervisors at a public meeting is necessary in order to transact any business. A member of the board shall not be disqualified from voting on any issue before the board solely because the member has previously expressed an opinion on the issue in either an official or unofficial capacity.

53 P.S. § 65603.

65.     As a direct and proximate result of their actions set forth above, Defendant Supervisors

have and are continuing to violate state law and to interfere with Mrs. Wright Croft's performance of her

duties as an elected Supervisor of the Township by:

15

    a.   Making decisions outside of a public meeting with the requisite public notice as further described in Paragraphs 28 and 32 herein;

    b.   Deliberating and taking official action through the chain of command policy, through which fewer than all members of the Board, at times not even amounting to a quorum, are purportedly authorized to transact business;

    c.   Not giving notice to Mrs. Wright Croft, a member of the Board, of their intention to discuss official Township business and transact business.

WHEREFORE, Plaintiffs, Kathleen Wright Croft and Samuel E. Croft Jr., respectfully pray pursuant to Count Four that this Honorable Court:

(a)    declare invalid the actions taken by Defendants Richard Fidler, Tammi Iams, and Richard Martin at the January 6, 2020 reorganization meeting of the Board;

-and-

(b)    enjoin and restrain Defendants from violating the Sunshine Act and the Second Class Township Code;

- and -

(b)    enjoin and restrain Defendants from enforcing their "chain of command" policy;

- and -

(c)    award Plaintiffs their costs in this proceeding, including the payment of reasonable attorney's fees;

- and -

(d)    grant such other and further relief as is deemed appropriate.

Respectfully submitted,

STRASSBURGER McKENNA
GUTNICK & GEFSKY

By:    /s/Gretchen E. Moore
        Gretchen E. Moore
        PA ID No. 202103
        gmoore@smgglaw.com

        E.J. Strassburger
        PA ID No. 10231
        estrassburger@smgglaw.com

        Alexis M. Wheeler
        PA ID No. 325649
        awheeler@smgglaw.com

        Four Gateway Center, Suite 2200
        444 Liberty Avenue
        Pittsburgh, PA 15222
        T - (412) 281-5423

        *Counsel for Plaintiffs*
        Kathleen Wright Croft
        and Samuel E. Croft, Jr.

**JURY TRIAL DEMANDED**