IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KATHLEEN WRIGHT CROFT, SAMUEL  )
E. CROFT JR.,         )
             )    2:20-CV-01430-CCW
             )
    Plaintiffs,     )
             )
  v.           )
             )
DONEGAL TOWNSHIP, RICHARD   )
FIDLER, TAMMI IAMS, RICHARD   )
MARTIN, LANE TURTURICE,    )
             )
    Defendants.    )
             )

**<u>MEMORANDUM OPINION</u>**

Before the Court is the Motion to Dismiss filed by Defendants Donegal Township, Richard Fidler, Tammi Iams, Richard Martin, and Lane Turturice. ECF No. 70. For the reasons set forth below, Defendants' Motion will be GRANTED and Plaintiffs' Second Amended Complaint will be DISMISSED.

**I. Background**

**A. Factual Allegations**

Plaintiffs allege in their Second Amended Complaint that Plaintiff Kathleen Wright Croft ("Ms. Croft"), an elected member of Defendant Donegal Township's Board of Supervisors (the "Board"), has been the subject of an ongoing campaign of harassment and retaliation by the majority faction of the Board. *See* ECF No. 51 at ¶¶ 9, 17. Plaintiffs allege that the majority faction—currently comprised of Defendants Tammi Iams ("Ms. Iams"), Richard Fidler ("Mr. Fidler"), and Richard Martin ("Mr. Martin"), *see id.* at ¶¶ 10–13—in coordination with Defendant Township Solicitor Lane Turturice ("Mr. Turturice"), *see id.* at ¶ 14, has worked to marginalize

Ms. Croft because of her persistent criticism of Board policies and actions, specifically as they related to issues such as budgeting, employment matters, financial management, and policing.  *See id.* at ¶ 51.  Plaintiffs claim that Ms. Croft has been (1) the subject of allegedly retaliatory lawsuits, *see id.* at ¶¶ 22, 27, 37;  (2) denied access to Township offices and information important to her work as an elected Supervisor through the so-called "chain of command policy" embodied in Resolution 2-2019, *see, e.g., id.* at ¶¶ 18–21, 30–32, 39, 50;  (3) made to use Right to Know Law procedures to obtain information, unlike other Supervisors, *see id.* at ¶¶ 33–36;  (4) the subject of an allegedly spurious surcharge by the Township's Board of Auditors, *see id.* at ¶¶ 42–48;  and (5) rebuked by Defendants Turturice and Martin for her comments on police contract negotiations. *See id.* at ¶¶ 40–41.  According to Plaintiffs, the alleged cumulative result of these actions has been to effectively prevent Ms. Croft from fulfilling her elected duties.  *See* ECF No. 84 at 1–2.

Relatedly, Plaintiffs allege that Defendants Iams, Fidler, and Martin have violated Pennsylvania's Second Class Township Code and Sunshine Act by deliberating, and taking official action, on Township business outside the scope of public meetings and without requisite notice to Ms. Croft or the public.  *See* ECF No. 51 at ¶¶ 18-19, 53–62.

### B.    Procedural History

Plaintiffs filed their original, four-count complaint on September 22, 2020, ECF No. 1, and moved for a preliminary injunction on October 12, 2020.  ECF No. 4.  After the Court held a status conference with the parties regarding Plaintiffs' original motion for preliminary injunction, ECF No. 20, Plaintiffs filed an amended complaint on November 3, 2020, ECF No. 24, and a renewed Motion for Preliminary Injunction, ECF No. 25, on November 6, 2020.  On November 17, 2020, Defendants moved to dismiss the amended complaint.  ECF No. 31.

On January 14, 2021, before the Court ruled on Defendants' pending motion to dismiss, Plaintiffs filed a consent motion for leave to further amend their complaint, ECF No. 49, which

the Court granted.  ECF No. 50.  Plaintiffs filed the operative Second Amended Complaint that same day, *see* ECF No. 51, rendering Defendants' then-pending motion to dismiss moot.

In their five-count Second Amended Complaint, Plaintiffs make claims against Defendants under 42 U.S.C. § 1983 and state law.  Specifically, Plaintiffs allege that Defendants:  (1) unlawfully retaliated against Ms. Croft for her outspoken views on local political matters, in violation of the First Amendment (Count I, all Defendants);  (2) unlawfully discriminated against her because of her political views, in violation of the Fourteenth Amendment's Equal Protection Clause (Count II, all Defendants);  (3) unlawfully "deprived" Plaintiffs of their votes by impeding Ms. Croft's ability to perform her duties as an elected Supervisor, in violation of the Fourteenth Amendment's Due Process Clause (Count III, all Defendants);  (4) violated Pennsylvania's Second-Class Township Code (Count IV, Defendants Donegal Township, Iams, Martin, and Fidler);  and (5) violated Pennsylvania's Sunshine Act (Count V, Defendants Donegal Township, Iams, Martin, and Fidler).

On February 4, 2021, Defendants filed the present Motion to Dismiss Plaintiffs' Second Amended Complaint.  ECF No. 70.  Plaintiffs filed their opposition to Defendants' Motion on February 25, 2021;  as such, Defendants' Motion is now ripe for disposition.[1]

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim.  In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008).  Although a complaint need not contain detailed factual allegations to survive a motion

---

[1] In light of Plaintiffs' Motion for Preliminary Injunction, ECF No. 26, and the record developed in connection with the hearing held on Plaintiffs' Motion for Preliminary Injunction on January 27, 2021, *see* ECF No. 63,  the Court notes that, for the purpose of resolving Defendants' Motion to Dismiss, the Court considers only the operative Second Amended Complaint, Defendants' Motion, and the briefing submitted in connection therewith.

to dismiss, it cannot rest on mere labels and conclusions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

Finally, if a civil rights claim is dismissed pursuant to Rule 12(b)(6), the Third Circuit has held that the district court must provide leave to amend "unless an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 236;  *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("In our Circuit, 'district courts must offer amendment [in civil rights cases]— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.'") (citation omitted)).  Amendment is futile where an amended complaint could not withstand a renewed motion to dismiss.  *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## III.   Discussion

### A.   Plaintiffs' Claims Under 28 U.S.C. § 1983 are Subject to Dismissal

#### i.   Count I – First Amendment Retaliation

With respect to Plaintiffs' First Amendment retaliation claim (Count I), Defendants advance three arguments in favor of dismissal:  (1) that Plaintiffs' claim seeks "improper judicial inquiry into political motives;"  (2) that the Second Amended Complaint fails to allege the type of conduct "deemed sufficient to deter an elected official from exercising her speech rights;"  and (3) that the individual Defendants are entitled to qualified immunity "on the basis that [Ms. Croft] does not have a 'clearly established' right against alleged retaliation for speech made within the scope of her official duties."  ECF No. 71 at 9, 27.  The Court will first address whether Plaintiffs have plausibly alleged a violation of the First Amendment before turning to consider whether the individual Defendants are entitled to qualified immunity because the right that Defendants allegedly violated was not clearly established.  *See Santini v. Fuentes,* 795 F.3d 410, 418 (3d Cir. 2015) (noting that, following the Supreme Court's decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), courts have discretion to undertake the two-step qualified immunity analysis "in the order we deem most appropriate for the particular case before us.").

##### a.   Plaintiffs Plausibly Allege a Claim for First Amendment Retaliation

To state a First Amendment retaliation claim, a plaintiff must demonstrate "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal nexus between the constitutionally protected conduct and the retaliatory action."  *Zimmerlink v. Zapotsky*, 539

Fed.Appx. 45, 48 (3d Cir. 2013) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

Because "the alleged retaliatory conduct must have had more than a de minimis impact on the plaintiff's First Amendment rights" to be actionable, "[w]here the alleged misconduct relates to the statements or actions of elected officials, the threshold is particularly high." *Willson v. Yerke*, 604 Fed.Appx. 149, 151 (3d Cir. 2015). Thus, "the First Amendment may well prohibit retaliation against elected officials for speech pursuant to their official duties only when the retaliation interferes with their ability to adequately perform their elected duties." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181 (3d Cir. 2015).

First, the Court is not persuaded by Defendants' argument that Plaintiffs' First Amendment retaliation claim should be dismissed because it "seeks improper judicial inquiry into political motives." ECF No. 71 at 9. Although Defendants may be correct that a First Amendment retaliation claim by an elected official against her colleagues raises separation of powers concerns, *see* ECF No. 71 at 10 (citing *Tenney v. Branhove,* 341 U.S. 367, 376 (1951) and *Shields v. Charter Twp. of Comstock*, 617 F.Supp.2d 606, 615–16 (W.D. Mich. 2009)), courts have found such claims to be cognizable where the alleged retaliation interferes with the plaintiff-official's ability to perform her elected duties. *See Bond v. Floyd,* 385 U.S. 116 (1966); *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006).

Second, Plaintiffs have adequately pleaded allegations to support the "sufficient to deter a person of ordinary firmness" element of their First Amendment retaliation claim. Plaintiffs allege in the Second Amended Complaint that Defendants denied Ms. Croft access to Township facilities and information allegedly necessary for Ms. Croft to fulfill her duties as an elected supervisor in retaliation for Ms. Croft's public criticism of the individual Defendants' "policies and Township

activities, specifically those relating to budgeting, expenditures, police contracts, and employment." ECF No. 51 at ¶ 51. For example, Plaintiffs assert that Ms. Croft has been denied access to the Township offices on at least one occasion and prevented from accessing information provided to other supervisors. *See, e.g., id.* at ¶¶ 20, 30–32, 39. Furthermore, although Plaintiffs do not directly plead a close temporal proximity between Ms. Croft's alleged speech and Defendants' alleged retaliation, causation may be inferred from "a pattern of antagonism or the sum of the allegations," which is the case here. *Michalesko v. Freeland Borough,* 18 F.Supp.3d 609, 622 (M.D. Pa. 2014) (citing *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000)). Thus, viewing these allegations in the light most favorable to Plaintiffs, as the Court must when deciding a motion under Rule 12(b)(6), Plaintiffs have plausibly alleged that the alleged retaliatory acts were sufficient to interfere with Ms. Croft's ability to perform her elected duties and a pattern of antagonism from which causation can be inferred.

### b.   The Individual Defendants Are Entitled to Qualified Immunity

Having determined that Plaintiffs have alleged a plausible claim for retaliation in violation of the First Amendment, we must next address whether the right allegedly violated by the individual Defendants was clearly established at the time of the alleged violation such that "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Santini*, 795 F.3d at 417 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). We conclude that it was not, and, therefore, that the individual defendants are entitled to qualified immunity.

Qualified immunity, "properly applied, . . . protects all but the plainly incompetent or those who knowingly violate the law." *Phoenician Mediterranean Villa, LLC v. Swope*, 872 F.3d 138, 143 (3d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted)). Accordingly, government officials sued in their individual capacity are entitled to qualified

immunity for alleged violations of a plaintiff's civil rights "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d. Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In addressing a claim of qualified immunity, courts analyze "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right was clearly established at the time of the alleged misconduct." *Id.* (citing *Saucier,* 533 U.S. at 201). Further, "district courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191–92 (3d Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

In a recent precedential opinion, the Third Circuit emphasized that, for a right to be "clearly established," it "must be so apparent that 'every reasonable official would understand that what he is doing is unlawful.'" *Hira Educ. Servs. N. Am. v. Augustine*, No. 18-2377, 2021 U.S. App. LEXIS 7401, at *14 (Mar. 15, 2021) (quoting *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020)). Furthermore, "the right must be defined with a 'high "degree of specificity"' before [courts] consider that right clearly established." *Hira,* 2021 U.S. App. LEXIS 7401, at *14 (quoting *D.C. v. Wesby*, 138 S.Ct. 577, 590 (2018)). Thus, "the legal principle established in a precedential case must 'clearly prohibit the offic[ial's] conduct in the particular circumstances before him.'" *Id.* at *14–15 (quoting *Wesby,* 138 S.Ct. at 581).

That said, "'qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Thomas*, 463 F.3d at 291 (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). Here, Defendants assert that they are entitled to

qualified immunity on the sole ground that Ms. Croft "does not have a 'clearly established' right against alleged retaliation for speech made within the scope of her official duties."  ECF No. 71 at 27.  Defendants assert that following *Garcetti v. Caballos*, 547 U.S. 410 (2006), and more recent Third Circuit cases, *see Werkheiser v. Pocono Twp.*, 780 F.3d 172 (3d Cir. 2015), the law is unsettled as to whether an elected official's speech pursuant to her official duties is constitutionally protected.  *See id.* at 28–29.

Plaintiffs' claim in Count I of the Second Amended Complaint rests on the proposition that an elected official has a right to be free from retaliation by her colleagues that is sufficient to interfere with her ability to perform her elected duties, for speech related to her role as a public official.

That an elected official's speech is protected under the First Amendment is not a novel proposition.  *See Bond v. Floyd,* 385 U.S. 116 (1966) (holding that state legislature's refusal to seat an elected representative in retaliation for statements opposing the war in Vietnam violated the First Amendment);  *see also Montiero v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) ("It is clearly established that when a public official excludes a[n] elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment.").  However, the scope of that protection—and, importantly, the type or degree of retaliatory conduct sufficient to trigger a violation of the First Amendment—is not clear.

In *Garcetti*, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421.  Following *Garcetti*, the Third Circuit concluded in *Werkheiser* that it was not clearly established that the First Amendment would protect an elected official from retaliation by

his peers in a similar context. *See* 780 F.3d at 177. Although the facts in *Werkheiser* are not on all fours with this case—the alleged retaliation in *Werkheiser* took the form of plaintiff's colleagues not reappointing him to serve as the township's road master, *see id.* at 175—the upshot here is that the Third Circuit concluded that (1) it was not clear whether *Garcetti* applied to the speech of elected officials and (2) it was not clear that the type of retaliation at issue in *Werkheiser* would violate the First Amendment. *Id.* at 177, 181.

Thus, while an elected official's speech, broadly speaking, is protected under the First Amendment, it has not been clearly established what type or degree of retaliation is sufficient to trigger a constitutional violation. Certainly, retaliatory acts that actually prevent an elected official from taking office violate the First Amendment, *see Bond*, 385 U.S. at 137, as does retaliation that actually prevents an elected official from speaking once in office. *See Monteiro*, 436 F.3d at 404 (denying qualified immunity where city council president had council member physically removed from public meeting). However, courts in this Circuit have found less severe retaliation—e.g. declining to reappoint an elected official to a non-elected position, *see Werkheiser*, 780 F.3d at 183, or not including an official in private meetings and discussions, *see Zimmerlink*, 539 Fed.Appx. at 50—to be insufficient. Indeed, while physical intimidation crosses the line, *see Landis v. Bishop*, 1:13-cv-1119, 2014 U.S. Dist. LEXIS 205905, at *24 (M.D. Pa. Sept. 23, 2014), mere verbal threats and harassment do not. *See Willson,* 604 Fed.Appx. at *151–152.

The allegations in Plaintiffs' Second Amended Complaint do not describe retaliatory conduct that rises to the level where a constitutional violation has been clearly established, such that a reasonable official in the individual Defendants' position would understand his or her actions to be unlawful. *See Hira*, 2021 U.S. App. LEXIS 7401, at *14. Although Plaintiffs argue that Defendants' alleged conduct "has excluded Supervisor Wright Croft from her office," ECF No 84

10

at 23, stripped of conclusory allegations, the Second Amended Complaint claims that Ms. Croft allegedly was subjected to the kinds of retaliatory acts courts in this Circuit have found, in this context, not to be violations of clearly established law, like being denied access to information and not being included in private discussions and decision-making. *See, e.g.,* ECF No. 51 at ¶¶ 18, 19, 31, 39. That is, there is no allegation in the Second Amended Complaint that Ms. Croft was ever prevented from speaking at public meetings, voting, or otherwise publicizing her criticisms of the Defendants and their policies. Furthermore, Plaintiffs do not point to, nor is the Court aware of, any precedential decisions from the Third Circuit clearly prohibiting Defendants' alleged conduct under the circumstances described in the Second Amended Complaint. *See Hira,* 2021 U.S. App. LEXIS 7401, at *14–15 (finding that "the legal principle established in a precedential case must 'clearly prohibit the offic[ial's] conduct in the particular circumstances before him.'") (quoting *Wesby,* 138 S.Ct. at 581). At least one non-precedential decision from the Third Circuit has affirmed dismissal at summary judgment of a claim based on allegations similar to what Plaintiffs allege here. *See Zimmerlink*, 539 Fed.Appx. at 50.

Mindful of the Third Circuit's recent reiteration that "[a]n official will not be charged with [understanding his conduct to be unlawful] unless existing precedent has 'placed the statutory or constitutional question beyond debate,'" *Hira*, 2021 U.S. App. LEXIS 7401, at *14 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)), the Court concludes that it was not clearly established at the time of the alleged retaliatory conduct that individual Defendants' actions would violate the First Amendment. As such, the individual Defendants are entitled to qualified immunity, and Plaintiffs' First Amendment retaliation claim against them will be dismissed.

Furthermore, having found that the individual Defendants are entitled to qualified immunity for Plaintiffs' First Amendment retaliation claim, Plaintiffs' claim in Count I against

11

Defendant Donegal Township will also be dismissed.  *See Williams v. W. Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (affirming, under *Monell v. New York Dept. of Soc. Servs.*, 436 U.S. 658 (1978), dismissal of claims against municipality where no claims against municipal employees remained).

That said, the Third Circuit requires that the district courts "must permit a curative amendment unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 246. Although the individual Defendants are entitled to qualified immunity under the facts as alleged in the Second Amended Complaint, because qualified immunity is an affirmative defense that plaintiffs need not anticipate in their pleadings, *see Thomas,* 463 F.3d at 293, and because the Court is not aware of precedent from the Third Circuit permitting denial of leave to amend where a complaint plausibly states a claim but falls short of alleging a violation of a clearly established right, out of an abundance of caution, the Court will grant Plaintiffs leave to file a third amended complaint to attempt to cure the deficiencies identified above with respect to Count I.

### ii.      Count II – Equal Protection (Class of One)

In Count II, Plaintiffs assert a claim under the Equal Protection Clause, alleging that Defendants unlawfully treated Ms. Croft differently than other elected members of the Board.  *See* ECF No. 51 at ¶ 68.  Defendants assert that Plaintiffs' class-of-one equal protection claim, asserted against all Defendants, should be dismissed, arguing (1) that Plaintiffs' claim seeks "impermissible judicial inquiry regarding the political motives for interactions between co-legislators" and (2) that "a rational basis exists as a matter of law with respect to the alleged differential treatment of political adversaries and political allies."  ECF No. 71 at 13.[2]  The Court finds that Plaintiff's equal protection claim is not cognizable and must be dismissed.

---

[2] Defendants also raise qualified immunity with respect to Plaintiffs' claims in Counts II and III.  However, because the Court concludes that Plaintiffs have failed to state viable claims in either Count II or Count III, the Court need not address whether defendants are entitled to qualified immunity for those claims.

Plaintiffs do not assert that any protected class is in play, here, and so are proceeding on a "class of one" theory. *See* ECF No. 84 at 12 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To maintain an Equal Protection claim under the "class of one" theory, a plaintiff "must allege that (1) the defendant treated [her] differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (discussing *Olech*, 528 U.S. at 564). The "rational basis" standard is very deferential and is satisfied "'if there is any reasonably conceivable state of facts that could provide a rational basis' for the differing treatment." *Newark Cab Assoc. v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *United States v. Walker*, 473 F.3d 71, 77 (3d Cir. 2007)).

In *Enquist v. Or. Dep't. of Agric.*, 553 U.S. 591 (2008), the Supreme Court held that class of one Equal Protection claims are not cognizable in the public employment context. *Id.* at 607. Underlying the holding in *Enquist* was the "'common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" *Id.* at 607 (quoting *Connick v. Myers,* 461 U.S. 138, 143 (1983)). Although concerned with claims by public employees, the rationale grounding the Supreme Court's holding in *Enquist* applies with equal force in the context of a class of one equal protection claim asserted by an elected official against her colleagues: In the absence of discrimination based on an elected official's membership in a protected class, the "class of one" theory would make democratic government unworkable by recognizing a federal claim every time an elected official is treated differently by her colleagues as a consequence of political differences.

Indeed, this natural extension of the Supreme Court's logic in *Enquist* is consonant with the Third Circuit's holding in *Zimmerlink* that plaintiff's Equal Protection claim was "legally

13

deficient," in part because "the dispute in question is a political one, and [plaintiff] has provided no basis to conclude that it is irrational that a politician would treat a political ally differently than a political opponent."   539 Fed.Appx. at 50 (affirming district court decision, *Zimmerlink v. Fayette Cty.*, Civil Action No. 10-237, 2012 U.S. Dist. Lexis 169349, at \*27 (W.D. Pa. Nov. 29, 2012), which granted summary judgment on the ground that "it is axiomatic and expected in the political arena that elected officials treat political allies differently than political foes.").

That is not to say that an elected official may never seek redress in federal court for the allegedly unlawful conduct of their colleagues—as discussed above, the First Amendment provides such recourse, under certain circumstances.   However, where, as here, the alleged differential treatment is rooted in admittedly political disputes, *see* ECF No. 84 at 2 (tying Defendants' allegedly unlawful conduct to Ms. Croft "criticizing the Board for a lack of transparency, especially in personnel, policing, and finance matters" and her disputes with the board over "police support and contracting matters"), the remedy is to be had at the ballot-box, not the courthouse. *Zimmerlink*, 2012 U.S. Dist. LEXIS 169349, at \*27, n.9 (collecting cases).

Accordingly, Plaintiffs' claim in Count II of the Second Amended Complaint will be dismissed.  Furthermore, because the Court concludes that Plaintiff's class of one equal protection claim is not cognizable in this context—i.e., political disputes between elected officials— amendment would be futile, and such dismissal will be with prejudice.  *See Shane*, 213 F.3d at 115 (no leave to amend required where amended complaint could not withstand renewed motion to dismiss).

### iii.    Count III – Due Process

Next, Defendants argue that Count III, asserted against all Defendants, should be dismissed because Plaintiffs have not "alleged facts showing that they were deprived of a constitutionally protected property or liberty interest in their vote."  ECF No. 71 at 14.  In support, Defendants

point to *Smith v. Twp. of Aleppo,* 05cv0071, 2005 U.S. Dist. LEXIS 45262 (W.D. Pa. Apr. 12, 2005), in which the district court dismissed at summary judgment "a virtually identical argument." ECF No. 71 at 15.  Here again, the Court finds that Plaintiffs' due process claim is not cognizable and must be dismissed.

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.'"  *Am. Express Travel Related Servs. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012) (quoting U.S. Const. Amend. XIV, § 1).  According to the Second Amended Complaint, "Plaintiffs have a property and liberty interest in their votes" of which they were deprived because "Defendants have interfered with Mrs. Wright Croft performing the duties of her elected office[,]" thereby "effectively den[ying] Plaintiffs of their vote."  ECF No. 51 ¶¶ 71–72.  In opposition to Defendants' Motion, Plaintiffs assert that their claim in Count III is grounded on the Supreme Court's "famous 'one-man, one vote' decision" in *Baker v. Carr,* 396 U.S. 186 (1962), in which the court found "'a citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution.'"  ECF No. 84 at 13 (quoting *Baker*, 396 U.S. at 208).

Fundamentally, the Supreme Court's decision in *Baker* was about voting power, and, specifically, whether plaintiffs who alleged that their votes were diluted relative to other voters could maintain a federal lawsuit challenging an inequitable state apportionment scheme.  In holding the federal courts had jurisdiction and that such claims are justiciable, the Court found that "[a] citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution" in situations involving false tallies, refusals to count votes from certain precincts, and ballot-box stuffing.  *Baker,* 396 U.S. at 208 (citations

15

omitted).  *Baker* added to this list situations where apportionment schemes result in some votes carrying disproportionately less weight than others.

Here, there is no allegation in the Second Amended Complaint that Plaintiffs' *votes* were in any way impaired or diluted.  Indeed, Plaintiffs cast their votes and Ms. Croft was elected.  ECF No. 51 at ¶¶ 9, 71.  Instead, Plaintiffs seek to extend *Baker* to situations where a group of voters' chosen candidate is later marginalized by her elected colleagues.  *See id.* at ¶¶ 71–72.  Other courts in this Circuit have rejected attempts to similarly expand the scope of *Baker*'s holding.  *See Harris v. Corbett*, NO. 1:11-CV-2228, 2012 U.S. Dist. LEXIS 61354, at *13–15 (M.D. Pa. May 2, 2012) (rejecting claim challenging state law where law affected voters equally).  Plaintiffs' reliance on *Baker* is, therefore, misplaced.

In *Smith v. Aleppo* a court in this District was presented with a virtually identical claim to the one pled here—citing *Baker*, plaintiff-voters asserted a due process/equal protection claim based on allegations that defendant-elected officials had marginalized the official for whom plaintiffs voted.  *See Smith*, 2005 U.S. Dist. LEXIS 45262, at *1–2.  The *Smith* court rejected the claim, noting that:

> Citizens may elect a member of a legislative body whose voice is ruthlessly muffled by the majority, but that does not mean that the voters' [sic] were denied any equal protection or due process right to "one right [sic] one vote" as with an unconstitutional apportionment.  It is not the process of election that is denied its due, in that case, but the political will of the electors whose redress is at the ballot, not in the Courts, *on that issue.*

*Id.* at *4 (emphasis original).[3]  The Court finds the opinion in *Smith* to be persuasive and will dismiss Count III for fundamentally the same reasons.  That is, assuming Plaintiffs' factual

---

[3] Plaintiffs correctly point out that *Smith* was decided at summary judgment.  *See* ECF No. 84 at 13.  However, in reaching its decision, the court specifically noted that

> Neither defendants nor plaintiffs cite any facts or make any record references to any facts learned in discovery, and appear to be content with the 'facts' as alleged

allegations are true and reading the Second Amended Complaint in the light most favorable to Plaintiffs, as the Court must when deciding a Rule 12(b)(6) motion, Plaintiffs have not pleaded any facts to support a claim that any protected interest they have in their *votes* was in any way impaired by the Defendants.   Furthermore, as with Plaintiffs' claims in Count II, because amendment would be futile, Count III will be dismissed with prejudice.

### B.    Counts IV and V – State Law Claims

Because Plaintiffs' federal claims will be dismissed as to all Defendants, the Court will decline to exercise supplemental jurisdiction over the state law claims alleged in Counts IV and V.   *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").   Because the Court does not address the merits of Plaintiffs' state law claims, Plaintiffs' claims in Counts IV and V will be dismissed without prejudice.

### IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED as follows:

1. Plaintiffs' claim in Count I, for retaliation under the First Amendment, will be DISMISSED WITHOUT PREJUDICE on the ground that the individual Defendants are entitled to qualified immunity;

2. Plaintiffs' claim in Count II, for violation of the Equal Protection Clause of the Fourteenth Amendment, will be DISMISSED WITH PREJUDICE;

---

in the amended complaint for purposes of this motion for summary judgment. Accordingly, the Court's decision on summary judgment is based upon the facts as set forth in the complaint, and all reasonable inferences.
*Smith,* 2005 U.S. Dist. LEXIS 45262 at *3 n.1.   Thus, while the Court is mindful of the difference in procedural posture between the motion in *Smith* and Defendants' Motion here, the Court finds the reasoning in *Smith* to be sound and applicable.

3.  Plaintiffs' claim in Count III, for violation of the Due Process Clause of the Fourteenth Amendment, will be DISMISSED WITH PREJUDICE;

4.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims;   therefore, Plaintiffs' claims in Counts IV and V will be DISMISSED WITHOUT PREJUDICE.

5.  On or before **April 8, 2021**, Plaintiffs may file a Third Amended Complaint to attempt to cure the deficiencies identified with respect to Count I, only, and may reassert their state law claims.  In light of the fact that Plaintiffs are represented by able counsel and have previously amended their complaint on multiple occasions, this will be the last opportunity for Plaintiffs to amend, and the Court will not afford the opportunity for further amendment.  If Plaintiffs do not file a Third Amended Complaint on or before **April 8, 2021**, the dismissal of Plaintiffs' claim in Count I will be converted to a dismissal with prejudice without any further action by the Court.

DATED this 25th day of March, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record